RAFAEL MARCHAND GONZÁLEZ, Plaintiff and Appellee, *v.* EUGENIO MONTES VIERA, ET AL., Defendants and Appellants.

No. 11324. Argued November 3, 1954.—Decided March 30, 1955.

*Gaspar Gerena Bras* for appellants.   *Otero Suro & Otero Suro* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Rafael Marchand González filed an action of accession against Eugenio Montes Viera and his wife Providencia

Quin. He alleged therein that he is the owner in fee simple of a house and lot located in the northern section of Santurce; that in the rear of the lot, and within it, the defendants built a zinc roofed, frame outbuilding, the part thereof on plaintiff's lot measuring 5 ½ meters in the front by 7 ¾ meters depth; that said building was constructed in bad faith, without the consent or knowledge of the plaintiff or of the former owners; and that he wants the defendants to demolish the building which they have constructed on his lot and restore things to their original state at their own expense.

The defendants answered denying the essential averments of the complaint and alleging that they built in good faith over 20 years ago and with the consent of the former owner, and that the plaintiff acquired the house and lot adjoining their lot[1] knowing that there existed between Vicente Arriví, former owner of the property, and the defendants, a contract of option to sell to them the house and lot that plaintiff acquired; that they have improved said house and have invested $2,000 in the porch, with the understanding that the house would be sold to them. The defendants requested that Arriví be summoned as a party to the suit and that at the proper time judgment be rendered ordering plaintiff and Arriví to transfer to the defendants-cross-claimants the title of the house and lot bought by the plaintiff at the agreed price plus the costs, expenses and attorney's fees.

The issue thus joined, the case went to trial. The court rendered judgment sustaining the complaint and dismissing the cross-complaint and ordering the defendants, either separately or jointly, to demolish at their expense the structure built on plaintiff's lot within the term of 30 days from the date the judgment became final and unappealable, plus costs.

---

[1] It appears from the record that the defendants acquired a small lot adjoining the rear part of plaintiff's lot.

On appeal, the defendants alleged that the trial court erred (1) in improperly applying §§ 298, 299 and 300 of the Civil Code; in failing to apply § 297 of that Code and in concluding that they erected the outbuilding in bad faith; (2) in concluding that the plaintiff did not act in bad faith in buying the house and lot with knowledge of the sales agreement existing between Arriví and the defendants; and (3) in acting with passion, prejudice and partiality.

■■ Inasmuch as we must first determine whether § 297 *et seq.* of the Civil Code (1930 ed.), which deal with the right of accession with respect to immovable property, are applicable to a case such as this one where the persons who built were lessees of the owner of the lot on which it was built, and where the outbuilding was built partly on their own lot and partly on a lot owned by another person, it seems proper to make an analysis of the cases decided until now by this Court which have a certain similarity, even if remote, to the question involved herein. We shall do so:

In *González* v. *Peña y Balbás*, 38 P.R.R. 640, plaintiff built three small frame houses on a lot for which he paid rent to the defendant partnership. As a result of an action of unlawful detainer, the plaintiff was evicted from the houses and lot. He then brought an action against the partnership to recover a certain sum as indemnity for the value of the houses. We held that a lessee had no right to be indemnified for the houses which he built on a lot for which he paid rent; that § 370 of the Civil Code, 1911 edition (§ 297, 1930 ed.) was not applicable to cases wherein the person who builds is a lessee of the land in question and that at the termination of the lease, the lessee could not be compelled to remove the improvements, even if he might do so without damage to the property, but that the lessee did have the right to remove them.

In *Rivera* v. *Santiago*, 56 P.R.R. 361, we held that houses built *in good faith*, on another's land become the latter's

property by right of accession, but that such transfer is not consummated until the owner of the land built upon fulfills his obligation to compensate the party who built for the materials and work required for the building. Also, that an unlawful detainer proceeding against a tenant at will does not lie against the owner of a house built on land, the subject matter of the litigation, with the consent of the owner thereof, unless there is an agreement regulating the rights of the litigants as to such building. (In this case the persons who built on another's land were not lessees of the plaintiffs.)

In *Carrasquillo* v. *Ripoll Maldonado, Int.*, 56 P.R.R. 375, we held that a person who sows in *good faith* on another's land, is entitled to be compensated for the value of his crops; that the houses built in *good faith* on another's land pass by accession to the owners of the land, and that such transfer is not consummated until the owners of the land comply with their obligation to pay to the builders the value of the materials and the work. (In this case also, the defendant was not a lessee of the plaintiff.)

In *People* v. *Carrasquillo*, 58 P.R.R. 178, the plaintiff, People of Puerto Rico, acquired by condemnation certain land located at the "Barriada Riera" of Puerta de Tierra, as well as a frame house which the defendant Carrasquillo had built with *the permission of the former owner of the land* on a small lot which was part of the land expropriated, granted to him by lease. We held that the building of a house, on another's land, in *good faith* and with the consent of the owner of the land, *whether it be under a lease contract or by mere tolerance*, not being a useful improvement or one for pleasure, is regulated by § 297 of the Civil Code, 1930 edition, and not by § 416. In that case we expressly overruled the case of *González* v. *Peña y Balbás, supra*, [2] "as well as any other case which may uphold a doctrine different

to that established in the cases of *Rivera* v. *Santiago* and *Carrasquillo* v. *Ripoll, supra.*"

In *Reyes* v. *Vázquez,* 58 P.R.R. 786, we held that one who at his expense and *with knowledge of the owner* of a parcel or lot, builds on it a house and lives in it, is a builder and possessor in good faith, with a right to occupy the building until said owner pays the cost of the materials and the cost of labor, and before he can be ousted from the land, the complaint should allege that that payment was made before the action was brought. (Neither was this a case of lease of lands.)

In *Aybar* v. *Jiménez,* 60 P.R.R. 729, the plaintiffs were the owners of a lot and leased a parcel to the defendant who built thereon a shack or shanty, wherein he established a shoe-repair shop. We ratified in our opinion that "a dwelling house, a permanent structure does not constitute a useful improvement or one for pleasure,[3] and that when it is constructed in good faith with the knowledge of the owner of the land who leased it for that purpose and in the absence of an agreement with the builder as to rights of either party in regard to the structure, unlawful detainer does not lie," and that said doctrine is only applicable to cases wherein the thing built is of permanent character, but such is not the case where the thing built is not permanent. In view thereof the defendant's eviction was ordered. (In that case the doctrine of accession was not involved.)

In *Santos* v. *Torres,* 66 P.R.R. 421, the plaintiff filed an action of unlawful detainer at sufferance. The defendant alleged that the premises described in the complaint were leased to him by the former owner and that he built thereon two houses and cultivated the property without objection on the part of said owner. We held that the defendant was

---

[2] As we shall hereinafter see, the overruling of the case of *Peña y Balbás, supra,* where there was a lease, was not justified.

[3] We need not discuss now whether or not a dwelling house, or a permanent structure is, generally speaking, a useful improvement.

entitled "to remove any improvements, useful or recreative, made by him on the property during the term of the lease; but he would have no right to recover the value of the improvements." [4]   (This last principle is in harmony with the decision in *González* v. *Peña & Balbás*, *supra*, which was expressly overruled in *People* v. *Carrasquillo, supra*.)

In *Figueroa* v. *Rodríguez*, 68 P.R.R. 248, the plaintiff leased a lot to the defendant and relying on the contract, the defendant erected on said lot a frame house and two small concrete houses which he used for commercial purposes.   We held that the right of accession arises "both when a person builds in good faith without a permit from the owner, the builder acting on the belief that he is the owner of the land built upon, and when he builds with the express consent of the landlord."

And in *García* v. *Stella*, 69 P.R.R. 911, we held that "the right of accession arises when the builder in good faith constructs on another's land without a lease of the lot or in case there is one, when for any reason the lease has terminated."   So far the discussion of slightly similar cases decided by this Court.

We shall now discuss the situation in the case at bar. From the evidence introduced it appears that the former owner of the property which now belongs to the plaintiff, leased the same to the defendants who built on the rear part of the lot on which the leased house stands and in part of another small lot acquired by them and adjoining the property which they occupy, a frame and cement outbuilding which consists of three apartments occupied by several families.   According to that evidence, the defendants always believed that the lessor would sell them the property which was the object of the lease contract.   However, there is no showing that the predecessor in title of the plaintiff ever agreed to sell the property to the lessees or gave them the

---

[4] As we shall see hereinafter this Court now adheres to that doctrine.

option of purchase in connection with said property, or authorized them to build the outbuilding or that the same was built with the knowledge and forbearance of said predecessor. Such was the finding of the trial court.

Do §§ 297, 298, 299 and 300 of the Civil Code of Puerto Rico, (1930 ed.), which deal with the right of accession, apply to the case at bar?[5] Obviously they do not. According to Manresa in his *Comentarios al Código Civil Español*, Vol. 3 (7th ed.), p. 303:

"The second question to which we refer is whether § 361 (297 Civil Code of Puerto Rico, 1930 edition) is applicable to those cases where the person who builds, plants or sows is a *lessee,* an emphyteutic tenant, or usufructuary of the land in question. *Undoubtedly not. The aforesaid author (Laurent) believes, according to our opinion, that such cases 'shall be decided pursuant to the general principles applicable to such event in the lease, emphyteusis and usufruct', and thus insofar as the first of said contracts (lease) is concerned, the judgment of February 28, 1906 is affirmed."* (103 *Jur. Civ.* 463.) (Italics ours.)

---

[5] Sections 297 to 300 of the Civil Code, 1930 edition, provide:

"Section 297.—The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, by previously paying the indemnity specified in sections 382 and 383 of this Code, and [or] to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent.

"Section 298.—He who builds, plants, or sows in bad faith on another's land, loses what he has built, planted or sown, without having any right to indemnity.

"Section 299.—The owner of the land on which any one has built, planted or sown in bad faith, may exact the demolition of the work or the removal of the planting or sowing and the replacing of everything in its former condition, at the expense of the person who built, planted or sowed.

"Section 300.—When there has existed bad faith, not only on the part of the person who built, sowed or planted on another's land, but also on the part of the owner of such land, the rights of both shall be the same as though both had acted in good faith.

"Bad faith on the part of the owner is understood to exist whenever the act has been executed in his presence and with his knowledge and forbearance, and without opposition on his part."

Section 1463 of the Civil Code provides that "a lessee shall have, with regard to the useful and voluntary improvements, the same rights which are granted a usufructuary," and § 416 of that same Code provides that "the usufructuary may make, on the property given in usufruct, whatever improvements he deems proper, either for a useful purpose or for pleasure, provided he does not change its form or substance; but he shall have no right to be indemnified therefor," and that "he may, however, remove the said improvement, if it be possible to do so without damage to the property." Therefore, § § 1463 and 416, *supra*, refer to useful, voluntary improvements or improvements either for a useful purpose or for pleasure, and as we shall presently see, the outbuilding constructed by the defendants is not a useful improvement or one for pleasure.

According to the learned textwriter Castán Tobeñas in his work *Derecho Civil Español, Común y Foral*, First volume, 7th edition (1949), p. 621: "expenses or useful improvements are those which, without being essential, *serve to increase the earning capacity of the thing and* consequently its value (such *as new constructions* or plantations or work or labor intended to intensify the cultivation) . . . but in order to be real improvements it is necessary . . . that they be the work of man; that they be performed in the very property; that they be of a permanent character and purpose and *that they increase the earning power of the property.*" (Italics ours.) Said textwriter further states at page 622 of the aforesaid work that "the expenses and improvements, when made on another's property, are clothed with special legal relevancy and interest, for in such case and by virtue of the principles of enrichment they produce specific rights of reimbursement and guaranty in favor of the improver. This notwithstanding, in cases of voluntary expenses, no right of reimbursement is usually admitted, but only the *ius tollendi*, that is, the right to take with

132

him the ornaments involved, whenever possible without damage to the property."

■ The equally learned textwriter Manresa in his aforesaid work, Vol. 4, 6th edition (1951), p. 292 says: "Improvement is an increase in the value of the thing, *an increase in its usefulness*, a real, essential or accidental benefit over the original state"; and at page 298 that "*useful improvements are those that increase the produce or cause real advantage or benefit*" and improvements "of sheer luxury or for pleasure, are those of mere ornament or comfort, which embellish the thing without being influenced by the need or the desire for profit in making them." (Italics ours.)

■ The outbuilding constructed by the defendants in the case at bar, partly on plaintiff's lot and partly on another's property is not a useful work or one for pleasure, inasmuch as it in no way serves to increase the earning capacity of another's property on which it was built. Neither is it an improvement purely for luxury or pleasure, inasmuch as it can hardly be concluded that said outbuilding is merely an ornamental work or one for comfort or which embellishes the property without being prompted by necessity or by the desire for profit. A building such as the outbuilding in question is, furthermore, something indivisible inasmuch as "every building should be considered indivisible" —*Revista de Derecho Privado*, Vol. 31, p. 446—hence, far from producing benefits to plaintiff's property, it prejudices him. Consequently, the provisions of §§ 1463 and 416 *supra* are not applicable to the case at bar. See also Scaevola, *Código Civil*, Vol. IX, 1948 edition, p. 342, and Manresa, *op. cit.*, Vol. 4, 6th edition, p. 485.

■ Section 1451 of the Civil Code, 1930 edition, provides that "the lessee must return the estate at the expiration of the lease in the same condition in which he received it, except what may have been destroyed or im-

paired by time or by unavoidable reasons." In the case at bar, it does not appear from the record whether the lease contract expired, or therefore, whether the defendants have returned to the plaintiff the possession of the house leased. See §§ 1439 and 1461 of the Civil Code.[6] By virtue of the clear provisions of § 1451, *supra*, at the expiration of the lease contract the defendants must return the property leased "in the same condition in which they received it." Inasmuch as in the case at bar they built an outbuilding on part of the lot leased, before returning the property they must eliminate or remove that part of the outbuilding constructed on another's property without the consent or tolerance of the plaintiff or his predecessor.[7]

According to Laurent in his work *Principios de Derecho Civil*, Vol. 25 (1919 edition), p. 210:

"The only obligation imposed on the lessee by law and by the nature of the contract is to return the thing to the lessor in the same condition in which he received it. Therefore he is obliged to remove the sowing ʿr construction which did not exist when the contract was executed. The lessee's obligation to return the thing in the same condition in which he received it gives the lessor the right to demand that the premises be restored to their original state. *He may therefore, ask that the construction be demolished* and the plants uprooted . . . The right of accession may only be invoked when the wrongful occupant is not entitled to remove the plants and construction and this right belongs to the lessee; such a thing issues from

---

[6] Sections 1439 and 1461 of the Civil Code provide:

"Section 1439.—With regard to third persons, leases of real property, which are not duly recorded in the registry of the property, shall be of no effect.

"Section 1461.—The purchaser of a leased estate has a right to terminate the lease in force at the time of making the sale, unless the contrary is stipulated, and the provisions of the Mortgage Law prevent.

"If the purchaser should make use of this right, the lessee may demand that he be permitted to gather the fruits of the crop corresponding to the current agricultural year and that he be indemnified by the vendor for the losses and damages he may have suffered."

[7] The case of *Berrocal* v. *District Court*, 76 P.R.R. 39, is distinguishable from the case at bar.

the nature of the contract which entitles him to work on the property and consequently to dispose of the work done. *The absolute right of accession does not entail any legal nexus between the owner and the lessee. This absolute right is modified by the contract; it is impossible that the owner may exercise this right against the lessee, not even at the expiration of the lease contract, for if he had it then he would also have it while the contract is in force, and it is admitted that he does not have it. Our conclusion is that the owner's sole right is to demand that the plants and constructions be removed."* (Italics ours.)

By virtue of the foregoing, we conclude that the trial court erred in applying § 297 *et seq.* of the Civil Code, 1930 ed., to this case. We likewise conclude that the plaintiff is entitled to cause the part of the outbuilding which is standing on his lot to be demolished. However, the judgment shall be reversed, not because the trial court erroneously applied the provisions on accession of our Civil Code—the appeal is taken from the judgment and not from its grounds—but because of the fact that it in no way appears from the record that the lease contract has expired and that consequently the defendants have returned the possession of the property leased to the plaintiff.[8] We thus dispose of the first error.

■■ The second and third assignments hardly require any consideration. There is nothing to show that the plaintiff acted in bad faith in acquiring the property. (This was the finding of the trial court.) Nor is there any showing that said court erred in weighing the evidence or that it acted with passion, prejudice or partiality. *Peña* v. *Heirs of Blondet,* 72 P.R.R. 8; *Robles* v. *Guzmán,* 67 P.R.R. 671. On this last particular we wish to repeat what we stated in *Colón* v. *Government of the Capital,* 62 P.R.R. 24, 33, to wit: "It is a reproachable practice to make such charges when there cannot be brought before the appellate court a

---

[8] We must not suggest herein the proceeding to be followed in connection with the tenants occupying the part of the outbuilding to be demolished.

scintilla of evidence that the judge of the lower court failed to act with the equanimity, rectitude, and impartiality with which those who have the grave responsibility of administering justice must act." See also *Sandoval* v. *Simonet*, 62 P.R.R. 382; *Heirs of Gómez* v. *Colón*, 63 P.R.R. 99; *Muñoz* v. *Heirs of López*, 65 P.R.R. 697.

The judgment appealed from will be reversed and the case remanded to the Superior Court, San Juan Part, for further proceedings not inconsistent with this opinion.[9]

Mr. Justice Belaval agrees with the result.

[9] The case at bar is not a true case of excess, that is, it is not one where the owner of the lot builds thereon and by error or inadvertence he exceeds himself and builds in good faith on part of another's land. In such case the consequences, ordinarily, are different. See Judgment of the Supreme Court of Spain of May 31, 1949, 26 *Jur. Civ.* (new series), p. 1090.